## ARTHUR WILDER, SURVIVING PARTNER,

v.

## ST. JOHNSBURY & LAKE CHAMPLAIN RD. CO.

GENERAL TERM, 1891.

*Common carrier.   Damages for refusal to transport.*
*Waiver of tender of property.*

A general refusal upon the part of a common carrier to do business for a person, not made with reference to any particular property or any definite requirement, will not dispense with the necessity of a tender of property for transportation as preliminary to a claim for damages for refusal to transport.

Case for the refusal of the defendant to afford the plaintiff equal facilities of transportation. Plea, the general

issue. Trial by court at the December term, 1890, Cale-
donia county, TYLER, J., presiding. Upon the facts found
and certified the court gave judgment for the defendant.
The plaintiff excepts.

*W. P. Stafford* for the plaintiff.

The plaintiff had no coal to ship, but he had a coal busi-
ness to manage and he might rely upon the refusal of the
defendant as final. *Lewis* v. *Brainerd,* 53 Vt. 510, 519.

*S. C. Shurtleff* for the defendant.

To charge a common carrier with refusal to transport, the
property must be actually delivered. Story, Bail., s. 508;
*Merriam* v. *Hartford & New Haven Rd. Co.,* 20 Conn.
354; *Everett Messenger et al.* v. *Penn. Rd. Co.,* 37 N. J.
L. 531; 3 Wood's Ry. L., s. 427.

MUNSON, J. For four years prior to 1884 the plaintiff's
firm was engaged in selling coal at St. Johnsbury. Its sup-
ply was obtained in the state of New York, brought by boat
to Maquam Bay, and transported thence over the defendant's
road.

In April, 1884, the plaintiff had a dispute with Jewett, the
defendant's superintendent, about the defendant's liability
for the cost of an elevator which the firm had erected on de-
fendant's land. In the course of this dispute Jewett declared
that the company would not haul any more coal for the
plaintiff's firm. Upon a renewal of the controversy some
days later, Jewett repeated this statement, and said further
that the firm had got to go out of the coal business. The
plaintiff then asked Jewett what he would do if they should
bring a boatload of coal to the wharf at Maquam. Jewett
replied that he should not take it nor transport it; that he
should send the boat back into the lake; that they need not

buy nor bring any more coal to be shipped, for the company would not carry it.

Shortly after this the defendant entered into a contract with a firm which had not before been engaged in the sale of coal, by which it agreed to haul coal for this firm at the rebate before allowed the plaintiff's firm, and stipulated not to give a rebate to any one else except the Fairbanks company. That company was also a party to the agreement, and bound itself not to sell coal for a specified time except to its own employes. The plaintiff learned of this agreement early in June of the same year, and soon after it was made.

The controversy regarding the elevator, and other matters in dispute between the parties, were adjusted a few weeks after the conversation above recited. It does not appear that at the time of this adjustment any reference was made to what had been said in regard to further transportation. Neither party afterwards approached the other upon the subject. The firm treated Jewett's statement as final, and made no purchases for shipment by defendant's line. If it could have received its supply by that line, and been given the rebate allowed its competitor, it would have continued its business, and probably have sold as much that season as before. Finding that a competing business could not be carried on by bringing coal over the next cheapest route, it ordered but a small quantity, and disposed of this without profit. Before another season the firm was dissolved by the death of the senior partner.

The plaintiff contends that these facts show such a denial of his right to the facilities of transportation as gives him a cause of action against the defendant and entitles him to recover the damages sustained in the loss of his business. It is insisted that Jewett's statement was a waiver of whatever tender for transportation might otherwise have been necessary, and that no further action on the plaintiff's part was

required to fix the defendant's liability.   The defendant does not now question but that upon a tender of coal by the plaintiff it would have been its duty to carry it; but it claims that it cannot be held to respond in damages for a refusal to transport except where there is an actual tender of the property.

Assuming that an actual tender can be dispensed with, and that the statement of Jewett was in terms sufficient for the purpose, it is still necessary to consider whether the circumstances in which it was made were such as to permit of its being given that effect.   It is evident that the case we have is not the case that would have been presented if the conversation relied upon had related to some specific property then upon the line of the defendant's road awaiting shipment or in transit over a connecting road, or even to some distinct proposal dependent upon the defendant's service.   It is not necessary to consider what the plaintiff's rights would have been in either of the cases stated.   The statement here was not made with reference to any specific property, nor even with reference to a definite proposal.   At the time it was made the plaintiff's firm did not have any coal at Maquam for shipment; and it does not appear that the firm had ordered any coal sent to that point, nor that it was then the owner of any coal.   It is evident that Jewett's statement, made under these circumstances, can be given effect only as a general refusal to do business for the plaintiff in the future, and that if the plaintiff recovers it must be upon the ground that a refusal of that character is sufficient to subject a carrier to liability.

We think a refusal of further service, which is not referable to any particular property or definite requirement, cannot be given the effect of a waiver.   The doctrines of tender and waiver of tender have application only to matters definite and certain.   In cases where the rights of contracting parties depend upon a waiver of the tender of specific arti-

cles, the subject matter of the waiver is ascertained by the contract. The common law permits a tender of money only in cases where the sum is certain, or capable of being made certain by mere computation. The matter involved here, beyond the fact that the plaintiff was engaged in the coal business, was in all its bearings prospective and indefinite. If we hold that the facts stated are sufficient to charge the defendant the same as if the property had been on hand for transportation, we give the plaintiff the benefit of a waiver of the tender of property, the amount of which was in no way ascertained, and which could not but be a matter of uncertainty to the plaintiff himself. We think a refusal of this character can be given the effect of a waiver only when the property which would have been tendered but for the refusal is in some manner definitely ascertained. The circumstances existing at the time of Jewett's statement did not justify the plaintiff in treating it as a waiver. It is not necessary to determine the exact conditions that would have entitled him to do so.

*Judgment affirmed.*

Taft, J., dissents.

TAFT, J. I dissent, I am unable to see what connection the dispute of the parties about the cost of an elevator, has with the question in controversy. The plaintiffs were coal dealers at St. Johnsbury, and having been told by the superintendent of the defendant's road that the defendant would not ship any more coal for their firm, that it would not haul another ton, that they, the plaintiffs, had got to go out of the coal business, asked the superintendent what he should do if they brought a boat-load of coal to the wharf at Maquam, the terminus of the defendant's road. He replied

"That he would not take nor transport it; that he would send the boat back into the lake; that the plaintiffs need not

buy nor bring any more coal for the defendant to ship, for the defendant would not carry it."

The only defence now insisted upon is that the coal was not actually tendered. This raises the question whether a carrier can waive the tender of property, and waive the purchase of it, by the coal dealer. The logic of the majority opinion is that the carrier may waive the tender if the coal dealer at the time actually has the property. I infer no one having in mind the cases on that subject would deny this doctrine. In this case the plaintiffs were, in substance, told that they need not buy any coal, for if they did the defendant would not carry it. They were told you must " go out of the coal business." The doctrine held in this case is this, a carrier cannot, as matter of law, waive a tender of property not then owned by the intended shipper. Cannot legally waive the purchase of property and its subsequent tender. We must bear in mind that the notice of the carrier was not to buy any more coal. This (buying the coal) the majority of the court say cannot be waived. Coal used in this state is from Pennsylvania ; this is matter of common knowledge. A dealer who is told by a carrier that he need buy no coal, for he, the carrier, will not ship it, will do no business with him, must, in order to obtain his rights, buy his season's stock of five or ten thousand tons of coal, and then be informed that he must leave it at the mines because, forsooth, a corporation tells him that he should not have relied upon what its manager told him. Concede, as the majority opinion states, that "the doctrines of tender and waiver of tender have application only to matters definite and certain," what difficulty is there in applying the doctrine in this case? It is incumbent upon the plaintiffs, to entitle them to recover, to make definite and certain to the triers the quantity of coal that they would have sent over the defendant's line in the season of 1884. Indeed the plaintiffs have already made it definite and certain, by showing to the satisfaction of the court below, that had it not been for the unjust discrimi-

nation, the illegal high handed outrage of the defendant, they would have purchased as much coal in 1884 as in the season before. The old maxim is, that is certain which can be rendered certain. It is said that the amount of the property for the non-transportation of which the plaintiffs seek damages, was a matter of uncertainty even to the plaintiffs themselves ; true, concede that it was, they must make the amount certain and definite before a recovery. A miller sells a year's products of his flouring mill, the amount uncertain, of course ; his water power may vary ; his steam boiler explode, the amount may be one thousand barrels or it may be two—after a month's performance—the vendee says "I'll take no more flour, make all you please. I'll none of it." Can the vendor recover no damages because it is uncertain how much he would have made during the eleven months remaining?—or must he continue to manufacture for that time—in order to determine the exact amount? Again the court say that "the statement here was not made with reference to any specific property, nor with reference to a definite proposal." Is not this an error of fact? The statement was made with reference to the specific property that the plaintiffs proposed to get for their trade in 1884 and with direct reference to a proposal to do their business for that year. Can any one have any doubt about the subject of conversation between Jewett and the plaintiffs? or that it referred to the latter's business during the season of 1884?

The court say that a general refusal to do business is not sufficient to subject a carrier to liability. Why not? If a carrier says to a proposed shipper "I will do no business for you—I will ship no coal for you—if you bring any to me I'll send it back into the lake—you must go out of the business," what reason is there in saying—such statements are of no efficacy—but you must buy your coal—thousands of tons possibly—and augment your damages by the loss incurred in such a purchase.

This ruling is not in accord with our rulings generally upon the subject of tender, as these extracts tend to show.

" But if he to whom a tender upon a contract to be made, is at the time absolutely incapable of performing his part of the contract, the whole reason of     *     *     *³     displaying the goods, fails." *Morton* v. *Wells*, 1 Ty. 381.

How does an incapacity to perform differ from an absolute refusal? I cannot see. An offer to pay and a refusal to accept the money "superseded the necessity of a further tender." The offer was to pay—not an offer of the money in specie which would constitute a valid tender. *Dickenson's Admr.* v. *Dutcher*, Bray. 104. If a demand of specific articles is necessary and the party demands more than he is entitled to, and will take no less than he demands, the other party is excused from making a tender. *Russell* v. *Ormsbee*, 10 Vt. 274.

Whitcomb was to give Preston a deed, and possession, of land. He tendered a deed—which the latter refused to receive—and on trial insisted that the defendant did not tender the possession. The court said:

"The law never requires a nugatory act to be performed, and when the plaintiff gave the defendant notice that he would not accept the deed this was a renunciation of all rights incident to and growing out of the deed." *Preston* v. *Whitcomb*, 11 Vt. 47.

To the same point is *Gragg* v. *Hull*, 41 Vt. 217. It is upon the same ground that it is held, if an insurer denies the validity of a policy, the insured is absolved from the making of proofs of loss which otherwise would be necessary.

Applying such principles to the case in hand, when Jewett told the plaintiffs that he would ship no coal for them and that they must go out of the business, they were absolved from any tender whether they owned any coal or not. I would render judgment for the plaintiffs. Such a disposition of the case will be in accord with justice, equity, common sense, religion, and the law as heretofore administered, and in some degree tend to check the evil which the case shows existed in

St. Johnsbury of placing the coal trade in the hands of one individual—a monopolist.