Argued October 2, affirmed November 14, 1916.

LEVY v. NEVADA–CALIFORNIA–OREGON RY.*

(160 Pac. 808.)

Principal and Agent—Actions—Issues, Proof and Variance.

1. Under an averment that plaintiff himself made a contract with defendant railway, he could show that it was made through his agent, though the agent did not disclose that plaintiff was the principal.

---

*Authorities passing on the question of loss of profits because of inability of shipper to fill contract for sale of goods, as element of damages for carrier's breach of contract to furnish cars, are collated in notes in 26 L. R. A. (N. S.) 1191; 44 L. R. A. (N. S.) 643.

REPORTER.

Principal and Agent—Undisclosed Principal—Actions—Parties.

2. Though a contract was made by an agent who did not disclose his principal, the principal is the proper party in interest, and may maintain action for breach of the contract.

Carriers—Contracts—Breach—Damages—Measure.

3. As a general rule, damages for breach of a carrier's contract to supply cars may be predicated with reference to all that was in the reasonable contemplation of the parties in performance of the agreement.

Carriers—Contracts—Breach—Damages—Measure of.

4. Under a contract to supply cars for shipment of livestock, which the carrier broke by delay in supplying cars, knowing that the stock was intended for sale on the market in a distant city, the measure of damages is not the amount of depreciation at the point of shipment, but the depreciation in market value at the destination; that being within the reasonable contemplation of the parties.

From Lake: BERNARD DALY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action by Henry Levy against the Nevada-California-Oregon Railway, a corporation.

The amended complaint contains four separate causes of action, the gravamen of each of which is that the plaintiff in one instance and his assignors in the others contracted with the defendant for the latter to furnish cars at a station on its railroad in which to ship livestock for the San Francisco market; but that in violation of the agreement the defendant failed to supply the cars until a later date, in consequence of which delay the stock to be transported depreciated in weight and quality to the damage of the shipper.

The defense against each count of the amended complaint consists in general denials, and the affirmative charge, in substance, that if the animals declined in condition, it was on account of the negligence of the person in charge failing to give them sufficient food and proper care while in the stockyards of the defendant awaiting shipment.

The new matter of the answer is denied by the reply. The jury rendered a verdict favorable to the plaintiff, and from the consequent judgment the defendant appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. L. F. Conn* and *Mr. James Glynn,* with an oral argument by *Mr. Glynn.*

For respondent there was a brief over the names of *Mr. W. Lair Thompson* and *Mr. Arthur D. Hay,* with an oral argument by *Mr. Thompson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. Several assignments of error are predicated upon the fact that the court allowed testimony to the effect that the agreement with the defendant was made in each instance by an agent of the plaintiff who did not disclose his principal, the contention being that under the averment that the plaintiff entered into the contract it is not admissible to show that the compact was really made between the defendant and an agent of the plaintiff. The defendant's argument is that, in order for the undisclosed principal to recover on such a stipulation, it would be necessary to aver that the contract was made through an agent. This court has held to the contrary in *Kitchen* v. *Holmes,* 42 Or. 252 (70 Pac. 830), and *Smith Meat Co.* v. *Oregon R. & N. Co.,* 59 Or. 206 (117 Pac. 303). In other words, if the plaintiff alleges that he himself made the contract, it is permissible to prove that he did this by an agent. Cases like *Baker* v. *Eglin,* 11 Or. 333 (8 Pac. 280), to the effect that where A makes a contract with B for the benefit of C, the latter may bring an action upon

it, are not applicable in this instance. There the real party in interest was avowedly C, and he was entitled to litigate in his own name. In the present juncture if in fact the agreement was made by the agent acting for his principal, the latter is the real party in interest, and the proper one to conduct the litigation.

3, 4. Another class of errors assigned relates to the measure of damages. The defendant contends that it is the difference between the value of the stock at the point of shipment when offered for transportation and the reasonable worth of the same when the cars were actually furnished at the same place, while the plaintiff urges that it is the difference between what would have been the market value at the place of destination and the real worth of the stock at the time they arrived there. In brief, the defendant contends that the damages should be measured by conditions at the point of shipment, while the plaintiff maintains that they should be governed by the circumstances at the place of destination.

We note that the only cause of complaint is the delay in furnishing the cars where the stock was to be loaded as the parties had previously agreed upon. No charge is made that the animals were neglected or ill-treated en route to San Francisco. We observe, also, that it is alleged, and the evidence tended to show, that the cars were ordered for the transportation of the stock to the San Francisco market. The general rule is that damages may be predicated with reference to all that was in the reasonable contemplation of the parties in the performance of the agreement. It may be conceded that if the defendant had no knowledge or notice of the purpose for which the cars were to be used, or of the place to which the animals were to be forwarded, or of the purpose for which they were to be sent there,

the damages ought to be computed by the rule which the defendant suggests.

But here it is alleged and the evidence shows that it was within the contemplation of both parties that the cars were to be used to transport the stock to the San Francisco market; that is to say, they were to be taken there for sale. What injury, then, naturally flows from the neglect of the defendant to carry out its agreement? The delay, where the shipment originated caused a depreciation in the marketable condition of the animals, had its effect on their condition at their destination, and rendered them less valuable there. As stated in *Chattanooga So. Ry. Co.* v. *Thompson,* 133 Ga. 127, 131 (65 S. E. 285, 287), cited by the defendant:

"Ordinarily, in a suit by a shipper against a carrier, in case of injury to or loss of the property by the carrier's fault, the carrier is required to make compensation on the basis of the value at the place of destination."

In that case the court refused to apply that rule because in the agreement to furnish the cars there was no stipulation about any destination for the goods to be shipped in them. The court there properly decided that the damages should be computed as at the place of shipment, because there was no destination or particular market within the contemplation of the parties. In *St. Louis S. W. Ry. Co.* v. *Musick,* 35 Tex. Civ. App. 591 (80 S. W. 673), noted in the defendant's brief, the trial court charged the jury thus:

"If you find for plaintiff, the measure of damages will be the difference, if any, between the market value of the cattle when they should have arrived at their destination and when they did arrive, and also such damages, if any, as said cattle may have sustained by the unreasonable and negligent delay on the part of

defendant in furnishing cars and shipping said cattle after said cattle had been received by defendant for shipment."

The Court of Civil Appeals of Texas held this erroneous because it authorized double damages. In other words the two clauses of the charge were in legal effect duplicates, as the precedent is applied to the instant contention. Where there is a market value of property intended for sale, that is the standard by which depreciation of it must be measured, and that was the ultimate question to be determined in that case, no matter what was the cause of the decline. So here, the parties had in view the accomplishment of a certain plan by the plaintiff, namely, the delivery of sheep and lambs in San Francisco for market purposes. That which rendered them less valuable for that purpose is what would cause damage, and hence it was proper to instruct the jury to consider how much less they were worth than the market value by reason of the damage caused by the defendant's delay. The instruction of the court on that subject here follows:

"The damage in each cause of action in this case will be determined without any regard to rise or fall in the sheep or lamb market in San Francisco during the delay in furnishing cars alleged in each cause of action in the complaint, if you find there was any such delay, and without regard to any delay en route between the place where each shipment originated and its destination. The measure of damages, if any you find, will therefore be the difference between the reasonable market value of the livestock described in each cause of action set forth in the complaint at the time and in the condition such stock would have arrived in San Francisco if the Nevada-California-Oregon Railway had furnished cars according to the contract alleged in each cause of action, if you find such contract to have been made, and the decreased reasonable market value,

if you find there was any decrease, at the time and in the condition said livestock did arrive in San Francisco, taking into consideration only loss in weight and quality, if any, of the lambs or sheep, directly due to the delay, if any, of the defendant railroad in furnishing cars in which to move said stock, and without regard to any fluctuation in the price of lambs or sheep in the San Francisco market, or delay, if there was any, after the livestock was loaded on the cars. In other words, the damage, if any, is the loss in reasonable market value due solely to loss in weight or deterioration in quality of the lambs and sheep because of delay, if any, on the part of the defendant in furnishing cars, if you find defendant agreed to furnish cars as alleged. If you find plaintiff is entitled to recover damages from defendant, you will include in your verdict the reasonable value of any hay or feed necessarily fed to said livestock, and the reasonable value, if any, of necessary care and attention bestowed upon said livestock during the delay, if any you find, in providing cars for shipment, but in no event can you find for plaintiff damages in excess of the sum prayed for."

The trial judge very carefully excluded from the consideration of the jury anything about fluctuations in the price of the stock and limited the jurors solely to the consideration of loss in weight or deterioration in quality of the stock caused by the delay of the defendant in furnishing the cars as agreed. Other cases applicable are *McManus* v. *Chicago & Great Western Ry. Co.,* 156 Iowa, 359 (136 N. W. 769); *Texas & Pac. Ry. Co.* v. *Nicholson,* 61 Tex. 491; *Newport News etc. Co.* v. *Mercer,* 96 Ky. 475 (29 S. W. 301); *New York etc. R. R. Co.* v. *Estill,* 147 U. S. 591 (37 L. Ed. 292, 13 Sup. Ct. Rep. 444).

The following precedents cited by the defendant are distinguishable: *Richey* v. *Northern Pac. Ry.,* 110 Minn. 347 (125 N. W. 897), was where no place of destination was mentioned, and it was held that the damages must

be governed by conditions at the place of shipment. In *Gulf, C. & S. F. Ry.* v. *Hume,* 87 Tex. 211 (27 S. W. 110), it was held that if the shipment of stock is not made for a certain market, but for pasturage only at the point of destination, the damage is referable to the decline in intrinsic rather than market value of the chattels caused by the delay. In other words, the element of market conditions was not within the contemplation of the parties. *Galveston, H. & S. A. Ry. Co.* v. *Thompson* (Tex. Civ. App.), 44 S. W. 8, was also a case where stock was shipped to pasture and not to market. *Dawson* v. *Quincy etc. R. Co.,* 138 Mo. App. 365 (122 S. W. 335), was an instance where the plaintiff shipped two carloads of cattle from Trindle, Missouri, to Chicago. The train was delayed in arrival. The trial court instructed the jury that the defendant was liable: (1) For any loss to plaintiff occasioned by decline in the market at Chicago between the time plaintiff's cattle should have arrived and the time they did arrive; (2) for any shrinkage in the weight of the cattle over and above what was ordinary and usual in such cases; (3) for any loss to plaintiff occasioned by the stale appearance of the cattle caused by the delay. The Kansas City Court of Appeals held that this was a correct statement of the law, but that as to the first and third elements there was no proof, and consequently reversed the case, but it will be observed that it expressly recognized as an element of damages the shrinkage in the weight of the cattle caused by the delay of the carrier. *Southern Kansas Ry. Co.* v. *O'Loughlin Land & Cattle Co.,* 60 Tex Civ. App. 91 (127 S. W. 568), was a case where the transportation company refused to deliver the cars for so long a time that the owner was compelled to sell the goods at the place of shipment. Under those circum-

stances, there being no transportation whatever, the court held that the measure of damages was the difference between the market value at the destination and the same value at the shipping point less freight. There the feature of the stock arriving at the market was not open for consideration, because it was utterly absent.

In the present juncture, if nothing else were shown, we might well say that the failure to furnish cars at the appointed time worked out its full hurt at the point of shipment; that it accomplished there all it could in depreciation of the intrinsic worth of the animals; that it could have no subsequent effect upon them; and that, hence, the damage must be assessed according to their lessened value where they were delivered to the carrier. This, however, leaves out of view the feature that cars were to be furnished to carry the sheep to a specified market, not, indeed, to meet a certain price prevalent there on a particular day, but still to be sold there. That was the end to be attained, and it was known to the defendant. It contracted accordingly. Any shortcoming of the carrier, therefore, alleged and established, which operated to impair the plaintiff's fruition of the purpose taken into account by both parties to the agreement, constitutes ground for damage. The remedy ought to correspond in scope with the previously known plan which the defendant disarranged by its failure to co-operate as it promised.

Here we have within the contemplation of the parties the purpose of making the shipment to the San Francisco market. We have not only the delay of the defendant to supply the cars for that purpose, but we also have present the fact that later on the stock was actually transported to the destination. The measure of damage naturally flowing from these cir-

cumstances is the difference between the value of such stock in the condition in which they would have arrived at San Francisco if the cars had been furnished promptly as agreed and their actual value in the condition in which they did arrive. The other errors complained of either were not assigned, or were not presented in the brief; hence they must be considered as waived.

The judgment is affirmed.          AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.

---

Motion to dismiss appeal allowed November 21, 1916.