Submitted on briefs at Pendleton October 29, affirmed in part and reversed and remanded in part December 31, 1918.

## HINTON *v.* ROETHLER.

### (177 Pac. 59.)

**Appeal and Error—Harmless Error—Overruling Motion for Nonsuit.**

1. Any error committed by the court in overruling a motion for nonsuit was cured, if any of the parties afterward introduced evidence sufficient to sustain the verdict.

**Principal and Agent—Relation—Question for Jury.**

2. In action for breach of contract to deliver sheep, whether the person executing the contract for defendant was authorized to do so, or whether his act was ratified by defendant, *held* for the jury.

**Principal and Agent—Relation—Proof.**

3. Agency may be proved by the testimony of the alleged agent.

**Principal and Agent—Pleading and Issues.**

4. Under an allegation that defendant agreed to sell 400 head of sheep, plaintiffs could prove that the agreement was made by defendant in person, or by his authorized agent, or by one whose acts, though not previously authorized, were afterward ratified.

**Principal and Agent—Liability of Principal.**

5. A person is not liable on a contract executed by another in his behalf, unless he previously authorized or subsequently ratified the act.

**Trial—Instructions.**

6. Each instruction should be viewed in connection with the remaining instructions, and should be considered as a whole.

**Principal and Agent—Liability of Agent.**

7. Where one holds himself out as an agent and executes a contract in behalf of another, he is liable on an implied warranty that he is an authorized agent, where he was neither previously authorized nor the act afterwards ratified.

 [As to liability of agent executing contract in name of principal without authority, see note in Ann. Cas. 1915D, 722.]

**Principal and Agent—Liability of Agent—Pleading.**

8. In a plain action on a contract, recovery cannot be had against one of two defendants on the ground that he falsely held himself out as the authorized agent of the other defendant.

**Sales—Issues—Contract.**

9. In an action on a certain written contract to deliver sheep, executed by A. on behalf of R., recovery cannot be had from A., who subsequently, on R.'s failure to deliver, agreed to procure other sheep for plaintiff on the same terms; A.'s agreement being a new contract.

From Malheur: DALTON BIGGS, Judge.

In Banc.

W. W. Hinton and John Reece, partners doing business under the firm name of Hinton & Reece, brought this action against Amos Roethler and J. B. Adrian for the recovery of damages resulting from a breach of an agreement for the delivery of some sheep. It is alleged in the complaint that:

"The plaintiffs entered into written contract with the defendants and each thereof, wherein and whereby the plaintiffs purchased from the defendants, and the defendants and each thereof sold to the plaintiffs, four hundred head of fine ewe sheep from two to five years old, to be absolutely sound mouth stuff; at the agreed price of $14.50 per head, and in said contract the defendants and each thereof promised and agreed to deliver said sheep to the plaintiffs at Juntura, Oregon, on September 15th, 1917."

It is also averred in the complaint:

"That immediately upon the execution and delivery of said contract as aforesaid, the plaintiffs paid to the defendants on the purchase price of said sheep the sum of $400, and defendants received the said sum on said contract price, and acknowledged receipt thereof in the said written contract, and ever since said time the defendants have retained the said sum of $400 and now have the same in their possession."

After alleging that the defendants failed to deliver the sheep contracted for and after specifying the damages, the complaint concludes with a prayer for judgment "against the defendants and each thereof" for $400, the amount paid by the plaintiffs when the agreement was made, and also for damages in the sum of $1,625.

Roethler and Adrian answered separately; and the answer of each consisted of a general denial. Upon motion of Adrian the court directed a verdict for that

defendant; but as between the plaintiffs and Roethler the cause was submitted to the jury. The jury awarded the plaintiffs a verdict against Roethler. The plaintiffs appealed from the judgment obtained by Adrian; and Roethler appealed·from the judgment rendered against him.

AFFIRMED IN PART. REVERSED IN PART.

For appellant there was a brief submitted over the names of *Mr. Julien A. Hurley* and *Mr. Gus A. Hurley*.

For respondent Hinton & Reece, there was a brief presented by *Mr. John W. McCulloch* and *Mr. W. W. Wood*.

For respondent Adrian, there was a brief over the names of *Mr. Joseph J. Heilner* and *Mr. Geo. E. Davis*.

HARRIS, J.—The plaintiffs contend that Adrian was the agent of Roethler, and that acting as such agent, he made an agreement obligating Roethler to deliver 400 head of sheep to the plaintiffs. It was claimed by the plaintiffs that after Roethler failed to deliver the sheep "Adrian agreed to get them himself, and deliver them to plaintiffs," and that "Adrian thereby adopted the contract as his own and became bound by its terms"; and the complaint was therefore framed upon the theory that the two defendants were jointly and severally liable to the plaintiffs.

A statement of some of the evidence found in the record will be helpful. The negotiations which terminated in a written agreement were carried on by Hinton and Adrian. The writing recites that it is a contract "between Amos Roethler of Westfall, seller, and Hinton & Reece of Ontario, buyer"; and that the seller has sold to the buyer "about 400 head of fine

ewes 2 to 5 year old to be absolutely sound mouth stuff at $14.50 per head.    Time and place of delivery about Sept. 15, '17 at Juntura."    The receipt of $400 is acknowledged as a partial payment of the purchase price; the instrument is dated July 28, 1917; and the writing is signed thus: "Amos Roethler, seller, By J. B. Adrian."

Adrian testified, in substance, that he told Roethler that he thought that he could sell some of the latter's sheep at $14.50 per head to the plaintiffs and that Roethler stated that he would pay a commission of 50 cents per head if Adrian made the sale.    Adrian says that shortly after this conversation he saw Hinton in Ontario and opened negotiations for the sale of the sheep.    Adrian asserts that he told Hinton that he could get 400 head of sheep from Roethler and that Hinton said that he would take the sheep if they could be purchased for $14.50 per head.    Adrian stated that he then told Hinton that he would telephone to Roethler and ascertain whether the latter still had the sheep and whether he would "take that price."    According to the testimony of Adrian, he told Roethler when talking over the telephone, that the plaintiffs would take the sheep but that

"I would assume no obligations whatever, because, not knowing the ewes, I would sell them no other way except Mr. Roethler would be party of the first part, and that I would sign his name to the contract, and making him the party of the first part.  He said it would be all right, to go ahead and sell the stuff for him. * * Mr. Roethler stated to me over the telephone it would be all right to sell the stuff acting as his agent, which I had done at other times, not for him, but oftentimes for other people."

Hinton stated that when Adrian came out of the telephone office he said: "I talked to Amos and it is

all right''; and that they then went to the bank and drew up the written agreement. When the writing was signed the plaintiffs made a partial payment of $400. This partial payment was made in the form of a check which was drawn in favor of Adrian who explained to Hinton that Roethler ''is owing me money and I will make it right with him, I will give him credit on the amount he owes me.''

Prior to July 28, 1917, Adrian had sold a large number of sheep to Roethler and about two weeks after July 28th Roethler settled for the sheep which he had bought from Adrian. In this settlement, according to the testimony of Adrian, Roethler was given credit for the $400 which had been paid to Adrian by the plaintiffs; and Adrian also testified, when referring to the agreement made with Hinton, that he told Roethler at the time of the settlement ''of the contract being drawn, and exactly how it was drawn.'' Hinton testified that when dealing with Adrian on July 28th he understood that the latter was acting as the agent of Roethler and that he dealt with Adrian as such agent. Hinton also told the jury that he saw Roethler a few days before September 15th, the date specified in the contract as the time of delivery, and that they agreed to change the time for the delivery of the sheep to September 21st, and to change the place to Juniper Springs.

Roethler caused about 525 head of sheep to be driven to Juniper Springs on September 21, 1917. Hinton went to Juniper Springs for the purpose of receiving the sheep, but upon examining about 150 head found that the sheep did not meet the requirements of the contract and rejected them. It is not contended by either of the defendants that the sheep

driven to Juniper Springs met the requirements of the writing signed on July 28, 1917.

Roethler testified in substance, that he never at. any time authorized Adrian to act as his agent; and he also denied that he gave Adrian authority to sign his name when talking with Adrian over the telephone on July 28th. Frank Oxman was in charge of the sheep which were driven to Juniper Springs. When Hinton examined these sheep at Juniper Springs he exhibited the written contract to Oxman and the latter made a report to Roethler of what occurred. Roethler says that the first information he had about the written contract was when Oxman told him of having seen the writing at Juniper Springs. In brief, Roethler stated that he agreed to sell the sheep to Adrian and that he understood that Adrian in turn contracted to sell the sheep to the plaintiffs. Roethler explained to the jury that about two weeks after he had agreed to sell the sheep to Adrian the latter told him "Hinton will receive the ewes; I sold them to Hinton and Hinton will receive the ewes from you."

The plaintiffs claim that the defendant Adrian is individually liable on the contract for the reason that he adopted the contract by himsef agreeing to deliver the sheep. The record discloses that at different times subsequent to September 22d, Hinton talked with Adrian and that he also had several conversations with Roethler. Hinton testified that in one of his conversations with Adrian "in regard to fulfilling this contract" Adrian "said he would furnish me other sheep." When asked to give a full explanation of what Adrian said about being willing to turn over other sheep Hinton testified as follows:

"I went to Mr. Adrian, I says, 'Mr. Roethler is not going to fill that contract.' He says, 'Mr. Hinton, we have dealt a good deal; I don't want to change our

past relations. I have got some sheep I think will fill the bill, and I will let you have them.'"

The following is taken from the cross-examination of Hinton.

"Q. Isn't it a fact, Mr. Hinton, that Mr. Adrian told you that he would try to get sheep like those in the contract for you?

"A. No, sir.

"Q. O, he didn't offer them to you, he just said he would try to get them?

"A. He just said he would try to get them for me, and try to get them for me in good faith to me for what was going on."

1, 2. This litigation presents some features which are somewhat novel on account of the relative positions taken by the respective litigants. The plaintiffs claimed that both defendants were liable on the writing; that Roethler was bound by his agent; and that Adrian became obligated by what he said after the attempted delivery at Juniper Springs. Roethler contended that he never authorized Adrian to act for him. Adrian asserted that he had been authorized to act for Roethler. Each defendant gave testimony which was designed to strengthen his own position as well as to weaken the position of the other defendant. At the close of the plaintiffs' case, each defendant moved for a judgment of nonsuit; but both motions were overruled. Roethler contends that when his motion was made and overruled there was no evidence whatever to show that he had authorized Adrian to act as his agent. Even though it be assumed, without deciding, that there was no evidence at all upon the subject of agency when the plaintiffs closed their case in chief, yet any error committed by the court in overruling the motion was cured and Roethler cannot now complain if any of the parties afterward introduced

evidence from which the jurors were entitled to find that Adrian's acts were authorized or ratified by Roethler: *Roundtree* v. *Mount Hood R. R. Co.*, 86 Or. 147, 151 (168 Pac. 61). The record contains evidence which tends to show not only that Roethler authorized Adrian to sign the writing as his agent but also that he afterwards ratified all that had been done by Adrian as his agent. Whether Adrian was in truth authorized and whether Roethler did in fact ratify what had been done by Adrian were questions of fact to be decided by the jury and not by the court: *Anderson* v. *Adams,* 43 Or. 621, 633 (74 Pac. 215).

3. Immediately after all the parties had completed the introduction of all their evidence the court granted Adrian's motion for a directed verdict. Roethler asserts that ''if the court was right in granting the motion of Adrian'' his evidence ''should not be considered.'' This argument is based upon the contention that Adrian's agency could not be proved by his testimony. This notion though expressed with surprising frequency is without authoritative support; for, to repeat what was said in *Larkin* v. *Carstens Packing Co.*, 80 Or. 104, 106 (156 Pac. 578):

''The right to prove a parol agency by testimony of the person who claims to be the agent is not even open to debate.''

4. In instruction No. 5 the court told the jury that the complaint ''is based upon an alleged contract which was alleged to have been made by Adrian on behalf of the defendant Amos Roethler, whereby the defendant agreed to deliver sheep'' to the plaintiffs. Roethler insists that

''This is an incorrect statement because there is nothing said in the complaint to show that plaintiffs claimed that Adrian was an agent for Roethler.''

Under an allegation that Roethler agreed to sell 400 head of sheep the plaintiffs could prove that the agreement was made by Roethler in person, or by his authorized agent, or by one whose acts, though not previously authorized, were afterward ratified; for the reason that in the final analysis it is Roethler who agrees to sell the sheep: *Masters* v. *Walker,* 89 Or. 526 (174 Pac. 1164).

The charge to the jury embraced 15 instructions. The first 7 are the only ones claiming our attention; for instruction No. 8 merely states the rule measuring damages and instructions Nos. 9 to 15 inclusive consist of the statutory instructions given in all civil actions. Instruction No. 1 informs the jury that "the plaintiffs seek to recover from the defendant" $400 "paid on a contract" and $1625 "damages for defendant's alleged wrongful breach of a contract." Instruction No. 2 directs the jury to return a verdict for Adrian. Instruction No. 4 need not be noticed. The inquiry is now narrowed to instructions numbered 3, 5, 6 and 7.

5, 6. Instruction No. 6 follows:

"The question, plainly stated, gentlemen, in this case is whether that contract was made by J. B. Adrian on behalf of Amos Roethler. If it was, and you further find that there was a breach of that contract, then you should find for the plaintiff in the amount that you may think he is entitled to under the evidence in this case."

The question in this case involves something more than whether the writing of July 28, 1917, was made by Adrian "on behalf of" Roethler. The important question is whether Roethler authorized Adrian to make "that contract" or ratified it after it was signed. Instruction No. 6 was equivalent to telling the jury that if the writing was signed "in the name of" or "for

the benefit of" Roethler, he would be liable.    That the writing was signed by Adrian "in the name of" Roethler is proved conclusively, and that it was made by Hinton and Adrian for Roethler's benefit was likewise established; and yet Roethler could not be held liable unless he previously authorized or subsequently ratified Adrian's acts.    Instruction No. 7 contains the same fault found in the preceding instruction, because the court said:

"If you find that this contract was made by Adrian in behalf of Roethler, you should find for the plaintiff at least in the sum of $400."

It is true that each instruction should be viewed in connection with the remaining instructions and the instructions should be considered as a whole; and therefore instructions Nos. 6 and 7 might possibly be deemed innocuous if the crucial question involved in the litigation had been made unmistakably plain to the jury.    The fault inhering in instructions Nos. 6 and 7 is enlarged instead of diminished if we consider them in connection with instruction No. 3, which in effect advises the jury that Adrian was Roethler's agent. Instruction No. 3 reads as follows:

"When a contract is entered into by an agent on behalf of his principal and the name of the principal is disclosed and signed to the contract, recovery cannot be had against the agent on that contract.    For that reason the defendant, J. B. Adrian has been discharged from this case.    You shall therefore return that verdict, as I have directed you, in regard to J. B. Adrian."

The remaining instruction is No. 5.    It opens by stating that the complaint is based upon an alleged contract claimed to have been made by Adrian "on behalf of" Roethler; and then the instruction continues thus:

"If you find in this case by a preponderance of the evidence, that this contract was entered into by J. B.
90 Or.—29

Adrian on behalf of Amos Roethler as his authorized agent, and further find that the contract was broken, then it would be your duty to find for the plaintiffs against the defendant, Amos Roethler, in such amount as you might determine his damages to be."

Instruction No. 5, considered as a whole, is unobjectionable and yet its merits do not cure the faults in instructions Nos. 3, 6 and 7. If the words "as his authorized agent" had been inserted after the word "Roethler" in instructions Nos. 6 and 7, as they were in instruction No. 5, then instructions Nos. 6 and 7 would have been harmless. Were Adrian's acts either authorized or ratified by Roethler? is the vital question; for the answer to that question determines this lawsuit; and upon a retrial this outstanding feature of the controversy should be made plain to the jury.

7–9. The court properly directed a verdict for Adrian. The complaint alleges that both defendants entered into a written contract in July, 1917, to deliver 400 head of sheep at Juntura on September 16, 1917. The writing dated July 28, 1917, upon which the plaintiffs rely, is, if a contract at all, the contract of Roethler alone. If Adrian was authorized to sign the writing then he is not personally liable to the plaintiffs for any breach of the contract: *Stewart* v. *Perkins,* 3 Or. 509; 2 C. J. 812. Adrian could have been made personally liable, if appropriate language had been employed in the writing; but the writing does not disclose an intention to add Adrian's personal liability to that of Roethler, and hence if Adrian was authorized to sign the writing Roethler alone is liable. If Roethler neither authorized nor ratified Adrian's acts then Adrian would of course be liable on his implied warranty that he was an authorized agent: *Cochran* v. *Baker,* 34 Or. 555, 563 (52 Pac. 520, 56 Pac. 641); *Anderson* v. *Adams,* 43 Or. 621, 626 (74 Pac.

215); *Sorenson* v. *Kribs,* 82 Or. 130, 135 (161 Pac. 405); but the pleading relied upon·by the plaintiffs here does not charge this sort of liability. Assuming, without deciding, that the statements made by Adrian about trying to procure other sheep amount to a contract, nevertheless the plaintiffs would not be entitled to a judgment against Adrian in this action. These statements attributed to Adrian were made in October, 1917, and, if they can be said to have created a binding obligation, the result was a new contract. The only alleged contract mentioned in the complaint is the one claimed to have been made in July, 1917.

The evidence introduced and relied upon by Roethler and Adrian was admissible under their general denials: 31 Cyc. 1635; 2 C. J. 912, 917.

The judgment of the Circuit Court is affirmed as to Adrian; but as to Roethler the judgment is reversed and the cause remanded for a new trial.

AFFIRMED AS TO ADRIAN.    REVERSED AS TO ROETHLER.