Argued at Pendleton October 30, 1944; modified January 16, 1945

## CRAM *v.* TIPPERY ET AL.

(155 P. (2d) 558)

Before BAILEY, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*George Brewster,* of Redmond (Cunning & Brewster, of Redmond, on the brief), for appellant.

*W. F. Coshow,* of Bend (De Armond & Goodrich, of Bend, on the brief), for respondent L. H. Tippery.

LUSK, J.

The plaintiff has appealed from an adverse judgment in an action to recover damages for breach of contract. He alleged in his amended complaint that he purchased from the defendants seventy tons of hay at $16.00 a ton, and made a down payment of $500.00; that the defendants delivered to him thirty tons of hay, but refused to deliver the remaining forty tons, and that he was obliged to buy forty tons of hay at the market price of $25.00 and was thereby damaged in the sum of $360.00.

The defendant McCoy filed no answer or other pleading to the amended complaint. The defendant Tippery, by his answer, denied the sale as alleged by the plaintiff, and alleged in substance that the defendant McCoy was his agent in the transaction referred to, but that McCoy was only authorized to sell one stack of hay, and that the agreement between the plaintiff and the defendant Tippery, made through McCoy, was for the sale of one stack of hay without any understanding between them as to the tonnage in the stack. The defendant Tippery further alleged by way of counter-claim:

"That it was understood and agreed between plaintiff and defendant, Tippery, that said plaintiff was to pay sixteen dollars a ton for the hay. That the plaintiff has heretofore paid the defendant, Tippery, the sum of $500.00, which, in accordance with the understanding and agreement of the plaintiff and defendant, L. H. Tippery, was full payment for thirty-one and one-quarter tons of hay. That actually, the plaintiff received from the defendant, Tippery, hay in excess of thirty-five tons. That the plaintiff received, in excess of the hay paid for, three and three-quarters tons of hay, and is owing the defendant, L. H. Tippery, for said three and

three-quarter tons of hay, the sum of sixty dollars, and that the defendant, L. H. Tippery, has demanded of the plaintiff, that said sum be paid, but that plaintiff has refused to pay the same.''

Judgment for $60.00 was prayed for accordingly.

The trial was before the court without a jury. The court entered findings of fact in which it found that McCoy "was given limited authority to sell one stack of alfalfa hay, the same being the second crop or cutting and no more", and that McCoy signed "what purported to be a Bill of Sale transferring unto plaintiff alfalfa hay in the amount of 70 tons"; that the defendant Tippery, upon learning that McCoy had signed such bill of sale, refused to deliver any hay other than that contained in the stack which he authorized to be sold; that the amount of hay received by plaintiff from defendant Tippery was 32.7285 tons. The court further found that the defendant Tippery abandoned and offered no proof in support of his counter-claim. As conclusions of law the court found that McCoy exceeded his authority in signing the bill of sale for seventy tons of hay; that the defendant Tippery refused to recognize his act in so doing and "did not ratify said sale and transaction and is not bound by such contract"; and that the further and separate answer and defense of the defendant Tippery does not "estop him from asserting the limitation and restriction upon the authority to sell but one stack of hay.''

Judgment accordingly was awarded the defendant Tippery for his costs and disbursements.

LUSK, J.

It is not claimed by the plaintiff that the court's finding that McCoy's authority was limited to the sale

of one stack of hay, and that he exceeded his authority when he sold seventy tons of hay to the plaintiff, is not supported by substantial evidence   But it is contended that the defendant, by his counter-claim, has sought to enforce the very contract which he attempts to repudiate, and has thereby ratified it, and is consequently liable for its breach.

It appears from the evidence that the hay was grown on a ranch owned by the defendant Tippery. McCoy was Tippery's employe in charge of the ranch, and Tippery was living elsewhere at the time of the transaction in dispute.   Under date of November 7, 1942, McCoy executed a bill of sale reciting the sale by L. H. Tippery and Frank McCoy of seventy tons of hay at $16.00 per ton to Ira Cram, and acknowledging receipt of $500.00 on the purchase price.   This payment was made by a sight draft drawn on Central Oregon Production Credit Association by Ina Cram, the plaintiff's wife, the proceeds of which were collected by McCoy and turned over to Tippery.

Late in November, 1942, Tippery went to the ranch to live, and sometime in January, 1943, after the plaintiff had hauled all the hay in one stack and had started to remove hay from another, Tippery put a stop to further hauling.   Sometime later in the same month the plaintiff and his wife met with Tippery to discuss the matter and showed him the bill of sale.   There is no dispute in the evidence that at that time Tippery acquired knowledge of the terms of the sale which McCoy had attempted to make on his behalf.

On December 23, 1943, more than eleven months later, the defendant Tippery filed his answer and counter-claim, by which he demanded judgment for the

agreed price of three and three-quarters tons of hay sold to the plaintiff.

■ The rule respecting ratification of an agent's unauthorized acts applicable to the instant case is thus stated in the Restatement of the Laws of Agency, § 97, p. 241:

"There is affirmance if the purported principal, with knowledge of the facts, in an action in which the third person or the purported agent is an adverse party:

"(a) brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized;

"(b) bases a defense upon the unauthorized transaction as though it were authorized; or

"(c) continues to maintain such suit or base such defense."

Comment (a) on the same page reads:

"The suit may be against the third person for the purchase price of goods sold to him, or against the purported agent for money or other things received by him for the principal. The bringing of the suit or the basing of a defense in such cases is a manifestation of an election by the principal which, having been made, cannot be retracted."

■ To bring such an action is said to be "one of the most unequivocal methods of showing a ratification of an agent's unauthorized acts". 1 Mechem on Agency (2d Ed.) 329, § 446; 2 Am. Jur., Agency, 180, § 226. See *La Grande National Bank v. Blum*, 27 Or. 215, 41 P. 659; 2 C. J. S., Agency, 1119, § 55, and cases cited in note 76 on pp. 1119 and 1120; 2 C. J., Agency, 513, § 132, and cases cited in notes 97 and 98 on pp. 513

and 514. The rule is no different when rights under an unauthorized contract are asserted by the principal by way of counter-claim or set off, 2 C. J., *ibid. Edgar v. Breck & Sons Corp.*, 172 Mass. 581, 583, 52 N. E. 1083; *Shake v. Payette Valley Produce Exchange*, 42 Idaho 403, 245 P. 683; *Amicable Life Ins. Co. v. Kenner*, (Tex. Civ. App.) 166 S. W. 462.

■ And "no rule of law is more fundamental than if the principal elects to ratify any part of the unauthorized act of an agent he must ratify the whole," *La Grande National Bank v. Blum, supra*, 27 Or. at p. 217. See, also, *Dibble v. Hodes Co., Inc.*, 132 Or. 596, 608, 277 P. 820, 286 P. 554; *Williams v. Pacific States Fire Ins. Co.*, 120 Or. 1, 10, 251 P. 258; *McLeod v. Despain*, 49 Or. 536, 552, 563, 90 P. 492, 92 P. 1088, 123 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276.

On this subject it is said in 1 Mechem on Agency (2d Ed.) 330, § 446:

"Here, as elsewhere, also, if he ratifies, he must ratify *in toto*,—he must take the burdens with the benefits, and, by demanding performance to himself, he assumes responsibility for the instrumentalities,—the frauds, misrepresentations, promises and conditions—through which the act was induced, so far as they affect the enforceability of the contract upon which his action is founded."

Again, at p. 331, § 448, the author says:

"Suing to recover the price of goods, sold without authority or on unauthorized terms or conditions (instead of repudiating the sale and suing to recover the goods), ratifies the sale and charges the principal with liability for the terms and conditions upon which the goods were sold."

■ In view of these well-settled principles, it must be held that when the defendant Tippery, with full

knowledge that his agent, McCoy, had entered into a contract to sell the plaintiff seventy tons of hay, filed his counter-claim, in which he sought to recover a judgment for the unpaid and agreed price of a portion of the hay delivered to the plaintiff, he ratified that contract, and in doing so accepted its burdens, one of which was to deliver to the plaintiff the undelivered portion of the seventy tons of hay contracted to be sold.

■ It is objected by the defendant Tippery, however, that it was not the unauthorized contract entered into by the agent, McCoy, for seventy tons of hay which he sued upon, but some other contract, for one stack of hay, and which McCoy was authorized to make. The difficulty with that contention is that there was no other contract than the one evidenced by the bill of sale. The allegation of the counter-claim that "it was understood and agreed between the plaintiff and defendant Tippery that said plaintiff was to pay $16.00 a ton for the hay" can be taken as referring to no other contract because the only agreement between plaintiff and Tippery was that made on the latter's behalf by his agent, McCoy. And Tippery "cannot make a new contract by a selection of stipulations to which separately he (the plaintiff) has never assented." Cooley, J., in *Everts v. Selover,* 44 Mich. 519, 7 N. W. 225, 38 Am. St. Rep. 278. See, also, *Billings v. Mason,* 80 Me. 496, 15 Atl. 59; *Shoninger v. Peabody,* 57 Conn. 42, 17 Atl. 278, 14 Am. St. Rep. 88.

Had plaintiff paid nothing, and had Tippery commenced an action against him to recover the purchase price of all the hay delivered, the fact of ratification would, at first glance, have been perhaps more evident, but the reasons for application of the principles referred to would have been no different.

■ Defendant Tippery argues that the last cited case is distinguishable because the subject matter of the sale there was a piano which the principal could have replevied, while that remedy was not open here because the hay had been chopped and probably consumed. But we think the distinction is of no importance because the value of the hay could have been recovered in trover. It is further urged that the parties could not have been placed in *statu quo*. While that would be a material consideration were the question one of the duty of the principal to restore what he had received (*Clark v. Opp*, 156 Or. 197, 205, 66 P. (2d) 1179; Mechem, *ibid.*, § 436), it is without bearing on the effect of the assertion of rights under the contract by the principal.

■■ We conclude that the defendant Tippery, by setting up his counter-claim, has ratified the contract of sale for the breach of which the plaintiff sues. Such ratification, of course, relates back to the time when the unauthorized act was done, and makes it as effective from that time as though it had been originally authorized. *Van Dusen Investment Co. v. Western Fishing Co.*, 63 Or. 7, 12, 124 P. 677, 126 P. 604; 2 C. J., Agency, 516, § 138. Consequently the defendant Tippery is liable to the plaintiff for any damage sustained by the latter caused by Tippery's failure to fulfill his promise to deliver seventy tons of hay. The evidence shows without contradiction that, as found by the trial judge, the quantity of hay delivered to the plaintiff was 32.7285 tons. It also appears from uncontradicted evidence that the plaintiff was obliged to go into the open market and buy hay at the market price of $25.00 a ton, which was $9.00 in excess of the price stipulated in his contract with the plaintiff. He bought forty

tons, but he is only entitled to recover for his loss on 37.2715 tons. This amounts to $335.44. Since we are able to determine from the record that a judgment for that sum should have been entered in the court below, it is directed that such judgment be entered here, under Art. VII, § 3, of the constitution.

■ As hereinbefore stated, the circuit court found that the defendant Tippery offered no proof in support of his counter-claim. While we are of the opinion that the proof adequately supports the counter-claim in part, we cannot change the judgment in that respect because the defendant Tippery has not appealed.

. ■ The plaintiff assigns as error the court's refusal to enter judgment against the defendant McCoy. There is no occasion to consider the argument advanced that, in the circumstances of this case, McCoy, although only an agent and known to be such, is liable as a party to the contract of sale, for the record shows that although he appeared by counsel with his co-defendant and demurred to the original complaint, an amended complaint, which was filed after the demurrer was sustained, was not served upon him. The defendant Tippery answered the amended complaint, but McCoy did not appear further in the case except as a witness. In this situation the court was without authority to render a judgment against him. § 1-708, O. C. L. A.

The judgment in favor of the defendant Tippery is reversed and a judgment for the plaintiff entered here in the sum of $335.44. The judgment in favor of the defendant McCoy is affirmed.