Argued April 8, affirmed April 23, petition for rehearing denied
June 18, 1952

# PHILLIPS *v.* COLFAX COMPANY, INC.

243 P. 2d 276
245 P. 2d 898

*William L. Josslin,* of Portland, argued the cause and filed briefs for appellant.

*Glen McCarty,* of Portland, argued the cause for respondent. With him on the brief was J. W. Rosacker, of Portland.

Before BRAND, Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

Gordon J. Phillips, plaintiff, brings this action to recover $2,280 which he alleges he loaned to the defendant, Colfax Company, Inc. From a judgment in favor of plaintiff for that amount, defendant appeals.

To fully comprehend the instant matter, one must clearly understand the several legal entities involved and the respective composition and dominant ownerships in each.

Carl Fossi and his brother Albert, for some years prior to the transactions which are the basis of this action, were engaged in the construction business as partners under the name of Fossi Bros. We will hereinafter refer to this business as the "partnership."

Prior to August 18, 1947, Carl and Albert were the owners of a parcel of real property in Portland,

Oregon, upon which they desired to build an apartment house. On that date Carl and Albert, together with their then attorney, organized a corporation known as the Colfax Company, Inc. We will refer to it as the Colfax Company. Upon completion of the corporate organization, Carl and Albert transferred to it the parcel of Portland property referred to above. In the Colfax Company Carl became the owner of 75 shares of capital stock, his brother Albert 74 shares and their attorney one qualifying share. The three persons named constituted the entire stock ownership and the entire directorate. Carl became president of the corporation, and Albert officiated as its secretary. The corporate structure thus established was a necessary preliminary to securing a F. H. A. guaranteed mortgage loan for the purpose of financing the apartment house which was shortly after erected on the real property conveyed to the corporation by Carl and Albert.

The Colfax Company's president and secretary were authorized by resolution of the directors to employ contractors and borrow funds for the apartment house construction. About December 2, 1947, pursuant to this authority, they obtained a loan of $165,000 through the Investors Syndicate upon the security of the corporation's note and mortgage. About the same time they entered into a written contract in the name of the corporation with the partnership, Fossi Bros., for the construction of the apartment house.

This construction was begun by the partnership, as independent contractors, and completed about January, 1949. During this period the proceeds of the loan were delivered by the Investors Syndicate as mortgagee to the corporation from time to time as

the work progressed. The Colfax Company thereafter disbursed it to the partnership as payments due under the construction contract.

During the months of October and November, 1948, the months in which plaintiff alleges he made the loans sued upon, Carl Fossi, as a sole proprietor, was operating a used car business in Portland under the assumed name of Personality Motors.

By way of recapitulation we find at the time plaintiff began loaning his money, there were existent the following business entities which directly or indirectly were brought within the ambit of plaintiff's transaction: the defendant Colfax Company, owned in its entirety by Carl and Albert Fossi; Fossi Bros. partnership, the construction contractors for the corporation and consisting solely of Carl and Albert Fossi; and Personality Motors, then owned by Carl Fossi alone.

Plaintiff alleges that between October 15, 1948, and November 17 of the same year, at the special instance and request of the defendant corporation, he loaned the corporation $2,280 which the corporation agreed to repay. The defendant filed an answer in general denial. At trial it was stipulated that plaintiff had advanced the sum of $2,280. Carl Fossi admits receiving that amount but contends it was money loaned to him personally and not to the Colfax Company. The only issue, therefore, is: Did the Colfax Company receive and become obligated to pay the borrowed money?

Appellant's first two assignments of error are addressed to the court's refusal to grant defendant's motions for involuntary nonsuit and defendant's later motion for a directed verdict.

■ A motion for a nonsuit and a motion for a directed verdict are alike in that they challenge the legal sufficiency of the evidence and present the same questions. Such a motion admits not only all that the evidence proves but all that it tends to prove. *Johnson v. Hoffman et al.*, 132 Or 46, 56, 284 P 567. A motion for a directed verdict cannot be granted if the evidence in behalf of either party contains some competent evidence supporting each material allegation of the complaint. *Smith v. Industrial Hospital Association*, 194 Or 525, 242 P2d 592.

. ■ The ultimate question to be determined here is whether the transaction is that of the defendant corporation within the meaning of the law. It is good pleading to allege that the money was loaned to the Colfax Company, and it is competent to prove that averment by showing that the loan was negotiated by Carl Fossi, as agent of the defendant duly authorized, or that it was afterward ratified by the defendant corporation. *Scandinavian-American Bk. v. Wentworth Lumber Co.*, 101 Or 151, 157, 199 P 624; *Hinton v. Roethler*, 90 Or 440, 448, 177 P 59; *Masters v. Walker*, 89 Or 526, 529, 174 P 1164.

Before proceeding further to discuss the evidence which supports or tends to support plaintiff's allegation that he loaned the money to the Colfax Company, it may be well to pause here and take an inventory of certain matters in evidence which stand uncontradicted. Taken together, they furnish a background against which certain proof hereinafter referred to is to be evaluated. Unless these uncontroverted matters are borne in mind, the observations and conclusions that follow may not carry persuasion.

The record reveals these things as undisputed as of the time of the transactions which are the basis for

the instant action: That the Colfax Company was engaged in building an apartment house; that Fossi Bros., as independent contractors, had the construction contract; that the chief source of funds used in payment of the building costs was monies borrowed from Investors Syndicate on a F. H. A. mortgage; that these borrowed monies were disbursed from time to time in accordance with building progress reports; that by reason thereof, the Colfax Company was in debt to the partnership as the contractor at all times during the periods between the advances made by the mortgagee until the apartment house was completed; that construction by Fossi Bros. was not completed until some time in January, 1949; that Carl Fossi was president of the corporation and the officer of that organization giving more attention to its fiscal affairs than did his brother Albert; that Albert Fossi was the partner of Fossi Bros. who gave most of his time to the supervision of construction; that Carl Fossi was the sole proprietor of a used car business known as Personality Motors; that the plaintiff was a salesman employed by Carl Fossi in his used car business; that the plaintiff during the time alleged in his complaint delivered to Carl Fossi $2,280 in cash; and that this amount was the aggregate of six different items ranging from $100 to $625.

There is no dispute between the parties that coincident with the receipt of each of five of the six cash advances referred to, Carl Fossi gave plaintiff a check on the account of Personality Motors in a corresponding amount. It was defendant's theory that these five checks evidence a direct loan from Phillips to Carl Fossi, whereas it was plaintiff's contention that these checks were received by him only as collateral security for Fossi's agreement as a guarantor

of the defendant corporation's prime obligation to repay the loan. The jury resolved this issue of fact against the defendant and in favor of plaintiff.

There is no written evidence of a loan agreement between the defendant corporation and the plaintiff. The arrangements for the loan made by and between plaintiff and Carl Fossi were all oral. The plaintiff Phillips claims that Fossi approached him as an officer of the corporation for a loan to relieve the corporation's temporary financial embarrassment. In this plaintiff is corroborated by Vincent S. Hokanson, a fellow employee at Personality Motors who testified as follows concerning the initial advance:

"Q Who was in the office [of Personality Motors] at the time?

"A Gordon Phillips, Carl Fossi and myself.

"Q What was said by Mr. Fossi?

"A Well, Mr. Fossi stated that Investors Syndicate had held up their money and that he did not have the funds to pay the carpenters with, the men working on his apartment house, and he asked Mr. Phillips if he could borrow the money for Colfax, Inc., to pay the carpenters with and Mr. Phillips asked him — well, he sort of hesitated and Mr. Fossi made the statement that the corporation would pay him back and he personally would see that he obtained the money."

From Hokanson we learn that substantially the same conversation was had between Phillips and Carl Fossi at the time of each subsequent advance under this loan. Hokanson also testified that the same formula of distribution of Phillips' funds was followed after Carl Fossi had received the money from plaintiff. These distributions constitute a significant item in the subject of our inquiry. We will refer to them more fully later.

Plaintiff adduced no evidence that Carl Fossi, as president of the Colfax Company, had been expressly authorized by that corporation to borrow funds from him for defendant's use and benefit. He claims, however, that such implied authority is found in Article III of the corporation by-laws which reads:

"Powers and Authorities of the President. The president shall preside at all meetings of the stockholders and of the Board of Directors. Subject to the Board of Directors, he shall have general supervision and charge of the business of the corporation. He shall keep the Board of Directors fully informed, and shall consult them concerning the business of the corporation, in his charge. He may sign and execute all authorized bonds, notes, checks and other obligation in the name of the corporation, including all certificates of the shares of the capital stock of the corporation. He shall cause correct and necessary books of account to be kept of all business transacted by the corporation, and shall do and perform such other duties as may be assigned to him by the Board of Directors."

■ We cannot find in the foregoing by-law the degree of authority plaintiff claims. The only part referring to fiscal activities is that sentence of the by-law reading: "* * * He may sign and execute all authorized bonds, notes, checks and other obligation in the name of the corporation, including all certificates of the shares of the capital stock of the corporation * * *." This vests the president with authority to execute only the tangible evidences of previously authorized transactions. It imposes duties clerical in character. The corporation president does not acquire thereby authority to borrow in the corporate name or on the corporate credit.

■ Plaintiff's failure to bring to the record evidence of express or implied authority in Carl Fossi to

borrow money for the corporation does not, however, in and of itself defeat his cause. He does not fail if he can show that the loan negotiated by Carl Fossi was afterward ratified by the Colfax Company. *Masters v. Walker, supra.* In *Cranston v. West Coast Life Ins. Co.,* 72 Or 116, 129, 142 P 762, it is said: ·

> "* * * Ratification takes place when one person adopts a contract made for him and in his name, which was not binding upon him because the person who made it was not authorized to do so. Ratification is a question of fact, and in a great majority of instances turns on the conduct of the principal in relation to the alleged contract, or the subject of it, from which his purpose and intention in regard thereto may be reasonably inferred: Story, Agency (9 ed.), § 253 et seq.; Baker v. Seaweard, 63 Or. 350 (127 Pac. 961)."

■ It is elementary that when a corporation with full knowledge of the facts, accepts and retains the benefits of an unauthorized contract, it will be bound thereby. *Union Central Life Ins. Co. v. Kerron,* 128 Or 70, 75, 264 P 453; *Streichert v. Higgins et al.,* 121 Or 303, 306, 254 P 1023; *Scandinavian-American Bk. v. Wentworth Lumber Co.,* supra; *Cranston v. West Coast Life Ins. Co.,* supra; *Schreyer v. Turner Flouring Co.,* 29 Or 1, 8, 43 P 719; 13 Am Jur, Corporations, 936, § 984; 19 CJS, Corporations, 502, § 1020. The· benefit may be indirect as well as direct. *Johnson v. Wilbur-Ellis Co.,* 136 Wash 340, 239 P 1018, 1020; 2 Fletcher, Private Corporations (Perm. ed.) 834, § 773.

■ Such ratification relates back to the time when the unauthorized act was done and makes it as effective from that time as though it had been originally authorized. *Cram v. Tippery,* 175 Or 575, 583, 155 P2d 558; *Van Dusen Inv. Co. v. Western Fishing Co.,* 63 Or 7, 12, 124 P 677, 126 P 604.

■ We think the record reveals competent evidence of the corporation's ratification of the borrowing made by Carl Fossi from plaintiff sufficient to warrant the trial court's submitting the case to the jury. In so saying, we particularly refer to the testimony of the witness Hokanson, who testified as follows as to Carl Fossi's disposition of the cash advances when received from Phillips:

"Q Now, did you do anything with reference to helping disburse that money?

"A Yes, sir.

"Q What did you do?

"A Well, he [Carl Fossi] had envelopes which he marked down the amount of salary which the carpenters and helpers and so forth made and, of course, their deductions and everything and the total amount which they got after deductions. And I helped divide the money and put them in the envelopes and then I took the money over to his foreman and give it to the foreman to pay the help with.

"* * * * * *

"Q How many times did you take the money over to the help?

"A Every time, on each occasion."

And on cross examination the witness Hokanson further testified:

"Q Now, did I understand that on each one of those occasions—whether there were four or five you are not sure—you would take the exact money that Gordon Phillips handed to Carl Fossi and would take it to the foreman; is that right?

"A Well, I—it would be the money that he'd put in the payroll and I guess it was that exact amount from what I understood. And I took it to the foreman at the apartment house and he would pay the help with it.

"Q Is this a correct statement of your testimony: That on possibly four or five occasions you took some money from the used car lot office to the foreman that was—where they were building this apartment house at 1600 North Colfax? Is that a fair statement?

"A I took the money which Mr. Phillips gave Mr. Fossi at the used car office.

"Q Now, this is an important question and I don't want to confuse you or the jury. Are you sure that in each one of those cases the money that was handed—the physical money that was handed by Mr. Phillips to Carl Fossi was the same money that you took to the foreman?

"A Positive.

"Q You are positive?

"A Positive.

"Q You couldn't make a mistake?

"A I couldn't. I got right in his own automobile and drove over there with it.

"Q Yes. Is there a possibility that another envelope might have been handed to you containing different money?

"A No, sir."

 This line of testimony has corroboration from Carl Fossi. He stated that he had used part of it to pay carpenters and bricklayers working on the apartment house of the Colfax Company. This very partial use or benefit, as testified by Carl, flowing from the funds advanced by plaintiff worked a ratification of the whole loan. " 'No rule of law is more fundamental than if the principal elects to ratify any part of the unauthorized act of an agent he must ratify the whole.' " *Cram v. Tippery,* supra, at page 581, and cases there cited.

 Recalling as we again do that when the loans were obtained from the plaintiff, the corporation was

indebted to Fossi Bros. for construction still in progress, it follows that the relationship of debtor and creditor subsisted between the Colfax Company and the partnership of Fossi Bros. In this state of the record we think that the jury might well have concluded from the evidence that the $2,280 received by Carl Fossi from the plaintiff Phillips was received by him in his capacity as president of the Colfax Company, and, as such president vested with "general supervision and charge of the business of the corporation" (Article III of the Colfax Company's by-laws), was paid by him to Fossi Bros., the contracting partnership of which he was a member. As president of the debtor corporation and as a member of the creditor partnership, he must be presumed to know the status of the corporate debt to Fossi Bros. The very payment raises a presumption that the corporation was indebted to the partnership. § 2-407(7), OCLA.

Payment to Fossi Bros. on a corporation debt due that partnership was in the nature of a benefit to the corporation. What Fossi Bros. did with the Phillips money when received is immaterial. Indeed, what was represented by Carl Fossi as the corporation's need for the money is immaterial, if it can be shown that the corporation ultimately got the use and benefit of the money and even though that use and benefit did not correspond to its need, as represented at the time the money was advanced. The fact remains that the corporation's obligations to Fossi Bros. were reduced pro tanto by its acceptance of the money derived from Phillips. Even though the corporate loan made through plaintiff by the corporation's president was unauthorized, the defendant cannot close its eyes to the beneficial use which flowed to the corporation from the unauthorized loan. The corporation's eyes in this

instance were those of its president, who also was the supervising manager of all its business. By reason thereof it had immediate notice of the fact that plaintiff's money had been employed in the reduction of the corporation debt.

> "The general rule is that the corporation is affected or charged with knowledge of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation through its other officers or agents, or its board of directors * * *."

19 CJS, Corporations, 613, § 1078. Also see *Fleishhacker v. Portland News Pub. Co.*, 158 Or 476, 487, 77 P2d 141; *Dillard v. Olalla Mining Co.*, 52 Or 126, 94 P 966, 96 P 678; 3 Thompson, Corporations (3d ed.) 323, § 1758.

> "Generally, where a corporation through its proper officers takes and retains the benefits of the unauthorized act or contract of an officer or agent and fails to repudiate the transaction and offer restitution within a reasonable time, it thereby ratifies and becomes bound by such act or contract if its action is taken with full knowledge of the material facts * * *."

19 CJS, Corporations, 500, § 1020.

If the testimony of the plaintiff and his witness Hokanson be accepted by the jury as true, then under the circumstances the Colfax Company received the benefit of the funds which its president, Carl Fossi, obtained from plaintiff and by such ratification became liable for the repayment of the borrowed $2,280. The verdict would indicate that the jury unanimously so concluded. The circuit court was not in error in denying defendant's motion for a directed verdict.

We have examined and find no merit in defendant's other assignments of error.

AFFIRMED.

PETITION FOR REHEARING

*William L. Josslin,* of Portland, for the petition.

*Glen McCarty* and *J. W. Rosacker,* of Portland, contra.

Before BRAND, Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

The defendant Colfax Company has petitioned for a rehearing.

It is evident therefrom that the defendant misconceives the judicial functions when the court is presented with a motion for nonsuit or directed verdict. Taken by its four corners, the matter in this petition might be appropriately addressed to a jury, for it calls upon this court to appraise the testimony in accordance with defendant's estimate of its relative weight and value. It is also in the nature of an indictment for our failure to do so in the first instance. Indicative of these things, we find the petition replete with phrases reading: "The Court's holding * * * is not based on adequate or proper evidence * * *"; "* * * uncontradicted written evidence * * * is brushed aside by this Court in favor of flimsy and conflicting oral testimony * * *"; "The Court disregards plaintiff's own testimony * * *"; "The decision ignores the repeated admissions of plaintiff * * *"; and "The

Court rejects the testimony of Carl and Albert Fossi * * * [and] accepts shifting and conflicting oral testimony unworthy of credence and contrary to established business practices * * *.'' But it must be remembered that the matter at bar is an action at law. It is not a suit in equity calling for a trial de novo on appeal with the incident duty to make our own independent appraisal of the relative weight of testimony adduced.

We have frequently and consistently defined the powers and limitations of this court when called upon to review alleged errors predicated upon a trial court's refusal, as here, to grant motions of nonsuit or motions for a directed verdict in law actions. In *Fish v. Southern Pacific Co.*, 173 Or 294, 301, 143 P2d 917, 145 P2d 991, we said:

> `` * * * In considering the propriety of these rulings, the motions must be regarded as having admitted the truth of plaintiff's evidence, and of every inference of fact that may be drawn from the evidence. The evidence itself must be interpreted in the light most favorable to plaintiff. McCall v. Inter Harbor Nav. Co., 154 Or. 252, 59 P. (2d) 697. Where the evidence conflicts, the court may not infringe upon the function of the jury by seeking to weigh or evaluate it, but is concerned only with the question of whether or not there was substantial evidence to carry the case to the jury and to support the verdict. Ellenberger v. Fremont Land Co., 165 Or. 375, 107 P. (2d) 837; Allister v. Knaupp, 168 Or. 630, 126 P. (2d) 317.''

Also see *Smith v. Industrial Hospital Ass'n*, 194 Or 525, 242 P2d 592, 596; *Edvalson v. Swick*, 190 Or 473, 478, 227 P2d 183; *Dudleston v. Chiravollatti*, 184 Or 405, 415, 198 P2d 858. Such inferences favorable to plaintiff may also be drawn from defendant's as well

as plaintiff's evidence. *Smith v. Industrial Hospital Ass'n,* supra.

We will, however, take notice of some of the petition's unequivocal and over-positive statements that there is *no evidence* of certain matters referred to in our former opinion.

The petition states: "There is no evidence that when any of the six loans in suit were negotiated, the corporation *owed any money to the partnership* or that any such debt equalled the amount of any or all of such loans. * * *." (Italics ours.)

This bold assertion is evidently inspired by the statement in our opinion:

"Recalling as we again do that when the loans were obtained from the plaintiff, the corporation was indebted to Fossi Bros. for construction still in progress, it follows that the relationship of debtor and creditor subsisted between the Colfax Company and the partnership of Fossi Bros. * * *."

We did not, however, attempt to demonstrate the existence of this debtor-creditor relationship beyond quoting from the testimony of plaintiff's witness Hokanson, repeating statements made by Carl Fossi to plaintiff respecting delayed payments of the corporation's money due to Fossi Bros. under the construction contract. This in and of itself is a substantial item of evidence warranting an inference by the jury that the corporation was then indebted to the partnership and one that cannot be ignored.

For more realistic assurance that the corporation was indebted to the partnership at the time it received the benefit of the Phillips loan, we need look no further than defendant's Exhibits X, Y and Z.

Preliminary to discussing these exhibits of defendant, it may be well to recall that the corporation had earlier entered into a contract with the partnership for the construction of an apartment house on property owned by the corporation. The work had begun early in 1948. At the time plaintiff made his first advance in October, 1948, the apartment building was then within approximately two months of completion. From the beginning of the construction until its termination sometime in January, 1949, the corporation was continuously in the debt of the partnership. This is confirmed by an examination of defendant's Exhibits X, Y and Z, hereinabove referred to. As a matter of convenience, if not necessity, the corporation arranged for its financing to the extent of $165,500 (inadvertently stated as $165,000 in our former opinion) in the manner and through the agencies referred to in our first opinion. It had given its note in that amount to the Investors Syndicate and secured the same by a mortgage on the apartment property. The funds derived from the loan were disbursed from time to time by the mortgagee to the mortgagor in accordance with a formula approved by the F. H. A. and pursuant to forms supplied by that federal organization. This formula and these forms are reflected by Exhibits X, Y and Z.

It appears therefrom that at certain periods, apparently at the end of each month, the contractor (the partnership of Fossi Bros.) would execute what is denominated as a "contractor's requisition", addressed to the corporation as owner of the apartment house under construction and requesting payment for work on the apartment house completed during the preceding month. Each requisition, among other things, carried an estimate of the total cost on completion of construction for each major item of the work and the value

of the work completed during the period subsequent to the last preceding requisition. These requisitions also disclosed the percentage of the total contract price which had been withheld from previous payments.

Exhibit X is the contractor's requisition for work done in the month of September, 1948, in the amount of $12,541; Exhibit Y is a requisition for the work done in the month of October in the amount of $5,461; and Exhibit Z is a requisition for the work done in the month of November in the amount of $2,141. To each of these exhibits is attached the F. H. A.'s authorization for the payment of the requested amounts and its certificate of mortgage insurance covering the same. From each approved payment as made, approximately ten per cent was retained to the credit of the contractor. The accumulation of these retained amounts is shown on each requisition. At the time of the making of Exhibit X, dated October 4, 1948, this retained amount was then $15,490; as shown by Exhibit Y, it was $16,097; and as shown by Exhibit Z, at the end of November it was $16,335. These items alone, furnished by and certified to Carl Fossi in his capacity as one of the contracting partnership, are in and of themselves most cogent and persuasive evidence of the existence of a debtor and creditor relationship between the corporation and the partnership at the times that plaintiff made his several advances. In addition thereto, the corporation was in the contractor's debt for the amount requested by each requisition from the last date of each previous month to and until the moneys called for were approved and insured by the F.H.A. and thereafter paid to the corporation by the mortgagee. An examination of the three exhibits referred to discloses that it took from two to four days to secure the F. H. A.'s approval and, according to Carl Fossi's testi-

mony, from two to three days thereafter before the corporation received the check.

It will be recalled that Hokanson testified that at the time Carl Fossi negotiated the loans from plaintiff "Mr. Fossi stated that Investors Syndicate had held up their money and that he did not have the funds to pay the carpenters with * * * ." It was, therefore, within the province of the jury to accept Carl Fossi's statement made in the presence of Hokanson as warranting a conclusion that it took more than "two or three days" to receive the checks from the mortgagee after they had been approved and insured by the F.H.A. It should not be overlooked that even after the contractor had presented its requisition for payment for work done in the previous month, it was continuing the construction of the apartment house; and during the interim from the presentation of the requisition to and until the contractor received payment therefor, the corporation had incurred further liability for work done during that interval, even though not payable until after the presentation of the next requisition.

■ We are of the opinion that defendant's Exhibits X, Y and Z, separately or together, are alone of such a substantial nature that the jury would be justified in concluding not only that the corporation owed money to the partnership at the time plaintiff made his loans but that such debt at all times exceeded the total amount of his advances for the corporation's use and benefit.

■ The petition states that:

"The decision utterly rejects and disregards the five checks * * * [aggregating $2,180 above referred to] each written out by plaintiff * * *, given to and accepted by plaintiff, and attempted to

be cashed by plaintiff, on each of five of the six occasions when loans were made."

Even if made out by plaintiff, as now claimed, they were nevertheless signed "PERSONALITY MOTORS Carl A. Fossi". These were offered by defendant on the theory that they evidenced direct loans from plaintiff to Carl Fossi and, therefore, were primarily and solely his obligation. Plaintiff's theory was that he accepted them only as collateral for the loan which he made to the defendant corporation. These conflicting theories concerning these checks were fairly presented to the jury by the court's instruction. Evidently the jury accepted plaintiff's construction of the check transaction and not defendant's, and we are not at liberty to disturb that conclusion. Certainly plaintiff's attempt to cash these checks is not inconsistent with his claim of their collateral status. He was at liberty to attempt to realize on his collateral any time after the due date of the corporation's obligation.

The petition for rehearing complains that:

"The decision disregards the plaintiff's pleading of an express contract by appellant corporation, and rests upon an alleged implied contract or moral obligation on the theory that regardless of legal technicalities, Albert and Carl Fossi received the benefit of plaintiff's money and ought to be made to pay for it.
"Thus, the decision is completely outside the pleadings of this case and rests upon alleged issues not properly before the Court * * * ."

The foregoing statement is a conclusion not justified by the facts nor the law. We can assume that by reason of the allegation of an express contract between plaintiff and the corporation for the repayment of the loans aggregating $2,280, the defendant petitioner implies

that such allegation without more precluded evidence than the unauthorized loan was thereafter ratified by the corporation. If such is the purport of the foregoing statement in the petition for rehearing, then the defendant is clearly in error.

*Masters v. Walker,* 89 Or 526, 174 P 1164, was a case wherein the plaintiff alleged in his complaint that " 'on or about the — day of April, 1914, defendant employed plaintiff as her attorney to act in the defense of a certain case then pending * * *.' " At the trial the plaintiff offered to show that his actual employment took place through an agreement with an attorney previously employed by the defendant and that the defendant later ratified this employment and agreed to pay for the same. This offer of proof was rejected by the trial court and resulted in a judgment of nonsuit from which plaintiff appealed. Mr. Justice BURNETT, speaking for the court, said, at page 529:

"It is good pleading to allege that an act was done by the defendant, and *it is competent to prove that averment by showing that the act was really done by an agent of the defendant thereunto duly authorized, or that it was afterward ratified by the defendant:* Kitchen v. Holmes, 42 Or. 252 (70 Pac. 830) ; Levy v. Nevada, C. & O. Ry., 81 Or. 673 (160 Pac. 808, L. R. A. 1917B, 564) ; Slevin v. Reppy, 46 Mo. 606; Hoosac Mining & Milling Co. v. Donat, 10 Colo. 529 (16 Pac. 157) ; Long v. Osborn, 91 Iowa, 160, 163 (59 N. W. 14) ; Hubbard v. Williamstown, 61 Wis. 397, (21 N. W. 295) ; Moore v. McClure, 8 Hun, 557; Hand v. Society for Savings, 18 N. Y. Supp. 157; Smith v. Des Moines Nat. Bank, 107 Iowa, 620 (78 N. W. 238) ; 2 C. J. 904.

"The ultimate question to be determined is whether the transaction is that of the defendant within the meaning of the law. One seeking to establish the affirmative of that proposition should

allege it directly and not endeavor to arrive at the result by circumlocution or argumentative statement. The allegation may be proved by direct testimony or by evidence of facts from which the law draws the conclusion that the act was that of the principal. It savors strongly of pleading evidence or at least redundancy for the pleader to state that the business under consideration was done by an agent or that, having been transacted without the defendant's sanction, it was afterward ratified by him." (Italics ours.)

Also see *Scandinavian-American Bk. v. Wentworth Lumber Co.*, 101 Or 151, 199 P 624; *Hinton v. Roethler*, 90 Or 440, 177 P 59.

■ Petitioner feels aggrieved because we did not give reasons for finding no merit in appellant's assignments of error Nos. III, IV and V. Assignments of error Nos. III and IV relate to the same matter, being alleged misconduct by plaintiff's counsel. This grew out of counsel's statement to the court that he was prepared to show that there were various checks issued against the Personality Motors' bank account to persons other than plaintiff that were not paid for want of funds. The checks, although offered, were not admitted in evidence. The offer was made after the corporation had been permitted to show the solvency of the Carl Fossi account in question by bank statements of the bank against which the checks were drawn. Under the circumstances, we think that the action of counsel did not constitute misconduct and that defendant was not prejudiced thereby. We also note that defendant's counsel made no motion for a mistrial at that time.

■ Defendant's assignment of error No. V is predicated upon the trial court's refusal to give a requested instruction concerning the use and application of the

borrowed money in the construction of the apartment house. Insofar as this proposed instruction had any bearing on the issues, it was elsewhere appropriately brought to the jury's attention by the instructions which the court gave.

The petition for rehearing is denied.