Argued February 8, affirmed May 2, 1962

# WILLIAMS' BAKERY *v.* COY

370 P. 2d 1021

*Edward A. Butler* and *Jack A. Gardner,* Eugene, argued the cause for appellant. On the brief were Butler, Husk & Gleaves and Jack A. Gardner, Eugene.

*Edwin E. Allen,* Eugene, argued the cause for respondent. On the brief were Bartle & Allen, Eugene, and Stults & Jayne, Roseburg.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

PERRY, J.

This is a suit in equity to reform a contract and to recover money claimed to be due and owing on bakery goods sold under contract. The reformation, which has no effect upon the questions presented, was allowed, the recovery of money was denied, and the plaintiff appeals.

The plaintiff corporation, Williams' Bakery, is engaged in the wholesaling of bakery products in Eugene, Oregon. The defendant was a resident of Reedsport, Oregon, on April 6, 1955.

The facts, in general, are that on or about April 6, 1955, an agreement was entered into between the plaintiff corporation and the defendant which, insofar as is material, provided as follows:

> "THIS AGREEMENT made and entered into by and between WILLIAMS' BAKERY, an Oregon corporation, as Seller, and Keith Johnson as Buyer, of Reedsport, Oregon.
>
> \* \* \* \* \*
>
> "\* \* \* The Seller hereby agrees to sell to Buyer and the Buyer hereby agrees to purchase and acquire from Seller bread, buns and rolls which are products of the Seller, in such quantities as

shall be required by Buyer from time to time, at the Seller's regular wholesale prices at the time of delivery, less a discount of 20% from such prices, F. O. B. Reedsport, Oregon.

        \*    \*    \*    \*    \*

"\*   \*   \* This agreement may be terminated by either party giving 7 days' notice in writing to the other party without prejudice to any rights or remedies at law or in equity which may be afforded or available to either party for breach of contract. In case suit or action is instituted upon this agreement the prevailing party shall be entitled to receive from the other party, in addition to costs and disbursements allowed by law, such sum as the court may adjudge reasonable as an attorney fee in said suit or action.

"\*   \*   \* Buyer shall have no right to assign this agreement or any interest therein or in or to the terms thereof without consent in writing of Seller first having been had and obtained. This agreement supersedes all prior agreements which may have been entered into between the parties and all such prior agreements are hereby terminated.

"Executed this 6 day of April, 1955.

"WILLIAMS' BAKERY
an Oregon corporation

By (s) BASIL T. WILLIAMS
Seller

(s) RALPH COY
Buyer"

This agreement was executed by Mr. Williams on behalf of the corporation and by Mr. Coy. Although Coy signed this contract, one Keith Johnson was listed as the buyer in the contract. The evidence, however, clearly establishes and defendant admits that at this time he was the owner of the equipment and route and was carrying on the distribution of the bakery products

in the Reedsport area and Johnson was his agent and employee.

■ On June 7, 1956, Keith Johnson and the defendant entered into an agreement by which the latter sold his business to the former. During the period from April 6, 1955, to June 7, 1956, Keith Johnson, who was acknowledged as the agent of the defendant Coy, ordered bakery goods from the plaintiff on behalf of the defendant. After June 7, 1956, Johnson continued to make orders and the bakery continued to supply the bakery goods. In December of 1959 Johnson filed a petition in bankruptcy and the plaintiff now sues to recover a balance due for the bakery goods supplied. The defendant admits that he was the owner of the business and was liable for the bakery products Johnson ordered prior to June 7, 1956, but claims these amounts were all paid. The trial court found, and we are satisfied, that the charges for all goods purchased during that period of time by the defendant were paid to the plaintiff. The real question involved in this matter relates to who is liable for the bakery goods unpaid for subsequent to that date.

It is the plaintiff's contention that the written agreement entered into between the parties is binding upon the defendant and that the defendant is liable for all of the purchases made by Johnson.

■ It is true, as contended by the defendant, that a seven-day *written notice* is required to terminate the agreement and this was not given. It is also true that the agreement was nonassignable without the written consent of the plaintiff. However, both of these requirements may be waived. Also, an examination of the agreement discloses the defendant is not required to purchase any bakery products from the plaintiff and

is required to pay only for such bakery products as he orders.

The question is not, therefore, one of breach of contract, but whether or not the defendant purchased bakery products from the plaintiff.

As previously noted, when the agreement was entered into the defendant Coy was the principal and Johnson was his agent in purchasing products from the plaintiff. The question of law presented lies in the field of agency.

If there was no termination of Johnson's agency brought to the attention of the plaintiff, then defendant is liable. If, on the other hand, plaintiff was notified of the termination of Johnson's agency, then Coy is not liable.

The trial court found that the plaintiff was placed upon notice that the defendant had sold the bakery route to Keith Johnson; that Keith Johnson was no longer authorized to purchase bakery goods from the plaintiff on behalf of Coy and that subsequent to the date of June 7, 1956, the defendant did not purchase any bakery products from the plaintiff; that, in fact, all of the products were ordered and purchased by Keith Johnson.

It is conceded that neither the defendant Coy or Johnson ever notified the plaintiff in writing of the sale of Coy's bakery distribution route to Johnson. However, Johnson testified he notified orally a Mr. Wetzell, who was in the employ of plaintiff, that he "had purchased the route." There are also circumstances in the dealings between plaintiff and Johnson which point to a change in the relationship between Coy and Johnson.

"A third person to whom a principal has manifested that an agent has authority to do an act has

notice of the termination of authority when he knows, has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him, that the agent does not consent so to act for the principal, or that the transaction has become impossible." Restatement, 1 Agency 2d 333, § 135.

The record discloses Mr. Wetzell was the sales manager in charge of sales and collections for the plaintiff corporation where the corporation's products were sold to wholesalers for retail distribution as in this case, and, in fact, had negotiated on behalf of the plaintiff the contract between the corporation and this defendant.

It is a general rule of law

" '* * * that the corporation is affected or charged with knowledge of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation through its other officers or agents, or its board of directors * * *.' 19 CJS, Corporations, 613, § 1078. Also see Fleishhacker v. Portland News Pub. Co., 158 Or 476, 487, 77 P2d 141; Dillard v. Olalla Mining Co., 52 Or 126, 94 P 966, 96 P 678; 3 Thompson, Corporations (3d ed.) 323, § 1758." *Phillips v. Colfax Company, Inc.,* 195 Or 285, 300, 243 P2d 276, 245 P2d 898.

This is a suit in equity and we are at liberty to re-examine the facts in this case and we have done so. There is ample testimony which, although disputed by the plaintiff, discloses that plaintiff was cognizant of

the fact that they were no longer after June 7, 1956, dealing with Coy as a principal under the agreement, but were dealing directly with Johnson. The trial court was in a better position to weigh the testimony than are we.

The judgment of the trial court is affirmed.